**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| PROCACCIO PAINTING & DRYWALL COMPANY, INC. | ) ) ) | |
| Defendant. | | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, WEST BEND MUTUAL INSURANCE COMPANY, by and through its attorneys, TRESSLER LLP, and for its Complaint for Declaratory Judgment against Defendant PROCACCIO PAINTING & DRYWALL COMPANY, INC., states as follows:

### PARTIES

1.      West Bend Mutual Insurance Company ("West Bend") is a Wisconsin corporation, with its principal place of business in West Bend, Wisconsin.

2.      Upon information and belief, Procaccio Painting & Drywall Company, Inc. ("Procaccio") is an Illinois corporation, with its principal place of business in St. Charles, Illinois.

### JURISDICTION AND VENUE

3.      This is an action for declaratory relief under the Declaratory Judgment Act, pursuant to 28 U.S.C. §§ 2201 and 2202.

4.      An actual controversy exists between the parties as to their respective rights,

duties, and obligations, if any, with respect to the premiums paid on certain insurance policies issued to Procaccio by West Bend.

5.　　The amount in controversy, exclusive of interest, costs, and fees, is in excess of $75,000.00 because the total amount of the premiums that Procaccio has demanded be refunded to it is in excess of $150,000.00.

6.　　Jurisdiction for this action is founded on diversity of citizenship under 28 U.S.C. § 1332 as the state of incorporation and principal place of business of the Plaintiff is diverse from the state of residence of the Defendant and the amount in controversy is in excess of $75,0000.

7.　　Venue is proper in this forum under 28 U.S.C. § 1391 in that Procaccio's principal place of business is in this District, and West Bend issued the insurance policies at issue in this matter to Procaccio in this District.

## GENERAL ALLEGATIONS

### A.　　Background

8.　　The National Council on Compensation Insurance, Inc. ("NCCI") is an industry-sponsored organization that creates rules and regulations for the administration of worker's compensation in a majority of states, including Illinois.

9.　　The Illinois Contracting Classification Premium Adjustment Program ("IL CCPAP") allows qualifying employers to apply to the NCCI for a special premium calculation that is based on an average hourly wage scale for each classification of contracting operations in Illinois. *See* Contracting Classification Premium Adjustment Program (CCPAP) Workers Compensation Premium Credit Application Form, NCCI, *available at* https://www.ncci.com/NCCIMain/ServicesTools/OnlineCatalog/Pages/FORMSCCPAP.aspx?pnl

=learnmore (last visited August 13, 2012).

10.     Once the NCCI has calculated the credit that should be awarded to the insured, the insurer applies the credit, often resulting in a refund of any premium amounts that had been paid in excess of that credit.

**B.     Credits in the West Bend Policies Issued to Procaccio**

11.     West Bend issued materially identical worker's compensation insurance policies bearing policy number WCA045750506 for the policy period January 1, 2006 to January 1, 2007 (attached hereto as Exhibit A), policy number WCA045750507 for the policy period January 1, 2007 to January 1, 2008 (attached hereto as Exhibit B), and policy number WCD045750510 for the policy period January 1, 2010 to January 1, 2011 (attached hereto as Exhibit C).

12.     For the January 1, 2006 to January 1, 2007 policy period, Procaccio's premium before the credit was applied was in excess of $500,000.  See Exhibit A.

13.     For the January 1, 2007 to January 1, 2008 policy period, Procaccio's premium before the credit was applied was in excess of $200,000.  See Exhibit B.

14.     For the January 1, 2010 to January 1, 2011 policy period, Procaccio's premium before the credit was applied was in excess of $30,000.  See Exhibit C.

15.     West Bend sent Procaccio an application form to send to NCCI to calculate the credit to which Procaccio was entitled under the IL CCPAP.

16.     West Bend realized that the NCCI would not have performed its calculation in time for the renewal of the policy for the January 1, 2006 to January 1, 2007 policy period, which would have resulted in Procaccio advancing a large sum of premium to West Bend, only to have a large portion of that premium subsequently refunded to Procaccio once the credit was calculated by NCCI and applied by West Bend.

3

17.     This would have created a cash flow inconvenience for Procaccio.

18.     In an effort to avoid this inconvenience, West Bend's insurance agents, Edward Boltz and Daniela LeBlanc of the Prime Meridian Insurance Group, articulated an arrangement between Procaccio and West Bend regarding the IL CCPAP credit.

19.     Under the arrangement, West Bend would use a scheduled rating credit to advance the contractor's credit to Procaccio.

20.     Specifically, the arrangement provided as follows:

(a)     West Bend would issue the renewal policy with a scheduled rating credit set high enough to include the anticipated IL CCPAP credit.

(b)     Procaccio would apply for the IL CCPAP credit through NCCI.

(c)     Upon receipt of the IL CCPAP credit information from NCCI, West Bend would apply the IL CCPAP credit to Procaccio's policy.

(d)     Upon application of the IL CCPAP credit to the policy, West Bend would offset the contractor's credit by reducing the scheduled rating credit from paragraph (a).

21.     Pursuant to the arrangement, for the January 1, 2006 to January 1, 2007 policy period, Procaccio's scheduled credit was increased to 51.7% until the IL CCPAP credit was issued. Upon application of the IL CCPAP credit to the policy, the scheduled credit was reduced to 30% to offset the IL CCPAP credit of 33%.

22.     For the January 1, 2007 to January 1, 2008 policy period, Procaccio's scheduled credit was increased to 53% until the IL CCPAP credit was issued. Upon application of the IL CCPAP credit to the policy, the scheduled credit was reduced to 30% to offset the IL CCPAP credit of 33%.

23.     For the January 1, 2010 to January 1, 2011 policy period, Procaccio's scheduled

4

credit was increased to 10% until the IL CCPAP credit was issued. Upon application of the IL CCPAP credit to the policy, the scheduled credit was reduced to 7% to offset the IL CCPAP credit of 40%.

24.     Procaccio was aware of the arrangement regarding the IL CCPAP credits, as Doris Procaccio, President of Procaccio Painting & Drywall Company, Inc., was present at each of the renewal meetings where the insurance agents at Prime Meridian explained the arrangement to her. Procaccio was also advised via email of the of the effect the arrangement would have on the scheduled credit.

25.     Ms. Procaccio approved of the arrangement and expressed her approval to the insurance agents during the renewal meetings.

26.     West Bend derived no benefit from this arrangement.

**C.     Procaccio's Complaint to the Illinois Department of Insurance**

27.     On November 28, 2011, Synergetic Solutions, Inc. ("Synergetic") forwarded a request for assistance from Procaccio to the Illinois Department of Insurance for electronic submission (the "Complaint").

28.     In the Complaint, Procaccio alleged that it had no knowledge of any agreements regarding the IL CCPAP.

29.     Procaccio requested in the Complaint that the Illinois Department of Insurance order West Bend to honor the original scheduled credit amounts without taking into consideration the reduced credit amounts following the application of the IL CCPAP credits, which would result in a refund of some of the premium paid for the 2006, 2007, and 2010 policies.

30.     Procaccio did not overpay the premiums owed for 2006, 2007, and 2010 because

of the above arrangement, so West Bend has refused to provide it with a refund.

31.     On May 17, 2012, the Illinois Department of Insurance sent a letter to West Bend (attached hereto as Exhibit D), explaining that the Department of Insurance does not have the appropriate authority to make a determination contrary to a statute, and that the contract between the parties governs their dispute. West Bend received that letter on June 1, 2012.

32.     On June 14, 2012, West Bend responded to the Department of Insurance via letter (attached hereto as Exhibit E), and requested a hearing and appeal of the findings set forth in the May 17, 2012 letter, including an opportunity to conduct appropriate discovery. The letter contended that, contrary to Procaccio's assertions, 215 ILCS 5/143.17a is not applicable to this matter.

33.     On July 23, 2012, the Department of Insurance responded to West Bend and Procaccio via letter (attached hereto as Exhibit F), and explained that the matters raised by the parties stem from the agreement between the parties, and therefore are not subject to the Department of Insurance's jurisdiction.

34.     Therefore, West Bend has exhausted its administrative remedies, and this matter relates only to the agreement between the parties, which is a dispute appropriate for declaratory judgment.

## COUNT I
### West Bend's Adjustment of Credits to Reflect the Illinois CCPAP Was Appropriate

35.     West Bend incorporates by reference the allegations set forth in Paragraphs 1 through 30, as though fully set forth herein as Paragraph 31.

36.     West Bend seeks a declaration that its adjustment of the scheduled credit for the policies issued to Procaccio for the January 1, 2006 to January 1, 2007 policy period, the January 1, 2007 to January 1, 2008 policy period, and the January 1, 2010 to January 1, 2011 policy

period was proper for the following reasons:

      (a)    West Bend voluntarily increased the scheduled credit amount to include the IL CCPAP credit, in order to avoid an inconvenience for Procaccio.

      (b)    West Bend later decreased the scheduled credit amount only in order to offset the IL CCPAP credit.

      (c)    West Bend derived no benefit from this arrangement with Procaccio, or from the change in the scheduled credit amount.

      (d)    Procaccio was made aware of the arrangement by West Bend's insurance agent, Prime Meridian Insurance Group, and did not object to or refuse the arrangement.

      (e)    The arrangement between West Bend and Procaccio properly reflected the amount of premium that Procaccio would have paid, if West Bend had merely required Procaccio to advance the full premium amount and await a refund from West Bend once West Bend received the IL CCPAP credit information.

## COUNT II
**West Bend Does Not Owe a Refund of Any Premium Amounts to Procaccio**

37.    West Bend incorporates by reference the allegations set forth in Paragraphs 1 through 32, as though fully set forth herein as Paragraph 33.

38.    West Bend seeks a declaration that it does not owe a refund to Procaccio for any of the amounts Procaccio paid in premiums on the policies issued to it for the January 1, 2006 to January 1, 2007 policy period, the January 1, 2007 to January 1, 2008 policy period, and the January 1, 2010 to January 1, 2011 policy period, because Procaccio paid the appropriate amount in premium for the following reasons:

      (a)    West Bend voluntarily increased the scheduled credit amount to include the IL CCPAP credit.

(b)     West Bend later decreased the scheduled credit amount only in order to offset the IL CCPAP credit.

(c)     Procaccio was made aware of the arrangement by West Bend's insurance agent, Prime Meridian Insurance Group, and did not object to or refuse the arrangement.

(d)     The arrangement between West Bend and Procaccio properly reflected the amount of premium that Procaccio would have paid, if West Bend had merely required Procaccio to advance the full premium amount and await a refund from West Bend once West Bend received the IL CCPAP credit information.

(e)     Procaccio paid the correct amount to West Bend in premiums, as a result of the above arrangement, and West Bend did not receive more than it was owed under the policies.

WHEREFORE, Plaintiff West Bend respectfully requests that judgment be entered in its favor as follows:

A.     Declaring that West Bend properly adjusted the scheduled credit to offset the Illinois Contracting Classification Premium Adjustment Program and it does not owe a refund of any premium amounts to Procaccio Painting & Drywall Company, Inc.;

B.     Awarding West Bend the costs of this suit; and

C.     Awarding West Bend such other and further relief as this Court deems just.


WEST BEND MUTUAL INSURANCE COMPANY


By: /s/ Daniel J. Cunningham
        One of Its Attorneys


8

Daniel J. Cunningham
Ann E. O'Connor
Tressler LLP
233 South Wacker Drive – 22nd Floor
Chicago, Illinois  60606-6399
(312) 627-4000
*Attorneys for Plaintiff West Bend Mutual Insurance Company*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | ) )  ) |
| Plaintiff, | )  ) No. |
| v. | )  ) |
| PROCACCIO PAINTING & DRYWALL COMPANY, INC. | )  )  ) |
| Defendant. | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2012, I electronically filed a **Complaint** with the

Clerk of Court using the CM/ECF system.

WEST BEND MUTUAL INSURANCE COMPANY

By: /s/ Daniel J. Cunningham
One of Its Attorneys

Daniel J. Cunningham
Ann E. O'Connor
Tressler LLP
233 South Wacker Drive – 22nd Floor
Chicago, Illinois  60606-6399
(312) 627-4000
*Attorneys for Plaintiff West Bend Mutual Insurance Company*