# EXHIBIT D



# Illinois Department of Insurance

PAT QUINN
Governor

Andrew Boron
Director

May 17, 2012

West Bend Mutual Insurance Company
Tiffany Hildebrandt
1900 South 18th Avenue
West Bend, WI 53095

Re:  Complaint number: IL11-11285
     Procaccio Painting & Drywall Co., Inc.

Dear Ms. Hildebrandt:

The purpose of this correspondence is to explain the process an insurance company must follow in order to comply with the provisions of 215 ILCS 5/143.17a. In accordance with the referenced statute citation, if an insurer increases premium 30% or more on a renewal policy, they must provide proper notice to the insured. The associated premium increase incorporates everything except payroll to determine the requisite renewal premium. Once the effective date of renewal arrives, the contract is frozen with all of the factors that make up the premium. The factors include, but are not limited to: scheduled credits, scheduled debits, class codes, and the experience modification factor. It is important to understand that the Contractors Credit Premium Adjustment Program (CCPAP) should not be incorporated into the calculation of the premium. The CCPAP credit is determined by NCCI when the insured submits an application to them. NCCI is solely responsible for determining the percentage of credit that the insurance company will return to the insured. It is the Department's contention that this one item should not be addressed in the renewal policy by the use of scheduled credits or debits. This should be outside the purview of the established premium.

In this particular instance, the policy issued contained scheduled credits equal to or greater than the expected CCPAP credit as determined by NCCI. This determination is beneficial to the insured; however, the Department cannot validate the practice incorporated in this instance. It is the Department's contention the insured must make a down payment based on a percentage of the annual premium. Due to the fact the contractors credit was advanced inappropriately, the corresponding premium was anywhere from 30% to 50% less than it should be. This was an obvious unwarranted benefit to Procaccio Painting & Drywall Company, Inc. When NCCI issued the CCPAP credit, the scheduled credit was adjusted to offset it. Since this is not in compliance with Section 5/143.17a, all credits must remain and the insured takes advantage of the insurance company. While this is an unfortunate circumstance, the Department does not have the appropriate authority to make a determination contrary to the associated provisions of state statute.

The Department hopes the provided explanation adequately details the rationale for the decisions made in this instance. The Department cannot condone any action taken by a producer or insurance company to advance any type of credit to an insured. Since some of the arrangements in this matter were not conducted in writing, and the insured advised they were unaware of certain practices that transpired, the involved parties were placed in a disadvantaged position. As you are aware, a contract is a binding agreement unless the two parties to the contract agree to different terms in writing prior to the inception of the contract.

Due to the facts that have been detailed, it is the Department's position that the insured in this situation is entitled to the scheduled credit that was issued with the policy at inception.

I hope this correspondence provides the necessary clarification in this matter. If you have any questions or concerns, please contact me.

Very truly yours,

Richard Allender
Assistant Deputy Director
P&C Consumer Assistance Unit
(866) 445-5364 (Toll free IL only)
(217) 785-4159
(217) 558-2083 (Fax)
consumer_complaints@ins.state.il.us